Everard W. MARKS, III, Individually and as Duly Qualified Provisional Administrator of the Succession of Everard W. Marks, Jr., et al., Plaintiffs-Appellees, Cross-Appellants,

v.

PAN AMERICAN WORLD AIRWAYS, INC., et al., Defendants-Appellants, Cross-Appellees.

No. 84–3354.

United States Court of Appeals, Fifth Circuit.

March 24, 1986.

Rehearing Denied April 30, 1986.

Robert E. Kerrigan, Jr., Deutsch, Kerrigan & Stiles, Francis G. Weller, Marc J. Yellin, New Orleans, La., for defendants-appellants, cross-appellees.

William C. Gambel, Milling, Benson, Woodward, Hillyer, Pierson & Miller, Wilson S. Shirley, Jr., New Orleans, La., for plaintiffs-appellees, cross-appellants.

Before WISDOM, POLITZ and TATE, Circuit Judges.

## OPINION

POLITZ, Circuit Judge:

This appeal is another in the growing list of cases arising out of the tragic crash of Pan American World Airways Flight 759 in Kenner, Louisiana, on July 9, 1982. Plaintiffs are the four children[1] of Mary Ann Marks and Everard W. Marks, Jr., two of the passengers on that fatal flight. Suit under Louisiana's wrongful death article resulted in a jury verdict awarding each child $250,000 per parent for loss of love and affection, $300,000 for loss of the services and support of their parents, and $2,000,000 for loss of inheritance. The trial court 591 F.Supp. 827, partially granted a judgment n.o.v. and struck the award for loss of inheritance, ordered substantial remittitur of the loss of support awards, declined remittitur for the awards for loss of love and affection, and granted prejudgment interest. All parties appeal. Finding no error, we affirm.

On the appeals and cross-appeals, the parties variously contend that the trial judge erred: (1) by refusing to order a remittitur of the awards for loss of love and affection; (2) by awarding prejudgment interest; (3) in striking the recovery for loss of inheritance; and (4) by failing to recognize that, even as remitted, the award for loss of services and support was tainted by the loss of inheritance evidence and recovery.

### 1. AWARD FOR LOSS OF LOVE AND AFFECTION.

We recently addressed and resolved the first issue. Evaluating the propriety of a damage award in *Caldarera v. Eastern Airlines, Inc.* 705 F.2d 778 (5th Cir.1983), in granting a remittitur we awarded $300,000 to a four-year-old child for the loss of love and affection of one parent. We did so after noting our guidelines:

We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock

---

**1.** The four children are now all majors. On the date of the accident their ages were: Everard III-20; Stephanie-19; Michelle-17; and Kyle-16.

the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount that *any* reasonable man could feel the claimant is entitled to. (Footnotes omitted.)

*Id.* at 784. The $250,000 award per child per parent is within the parameters of this circuit's maximum recovery rule, which translates to "the maximum amount the jury could properly have awarded." *Id.* See generally, *Haley v. Pan American World Airways,* 746 F.2d 311 (5th Cir. 1984).

We are especially hesitant to disturb an award where, as here, the trial judge has refused to adjust the jury's verdict. "The jury's assessment of damages is even more weighted against appellate reconsideration, especially when ... the trial judge has approved it." *Caldarera,* 705 F.2d at 783–84. See also *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927 (5th Cir.1982).

### 2. PREJUDGMENT INTEREST.

▇ Likewise, we recently resolved the second assignment of error adversely to the position of Pan Am. In *In re Air Crash Disaster Near New Orleans, Louisiana,* 767 F.2d 1151 (5th Cir.1985), we found that Louisiana law, specifically La. R.S. 13:4203, applicable in that diversity case, provided for interest from judicial demand on all claims arising *ex delicto.* See *Schackai v. Tenneco Oil Co.,* 436 So.2d 729 (La.App.), *writ denied,* 440 So.2d 759 (La.1983) (interpreting La.R.S. 13:4203 to allow an award of interest on future as well as present damages in an *ex delicto* action). As an *Erie* court we are bound to apply the law of Louisiana. There is no merit to appellant's challenge to the award of prejudgment interest.

### 3. LOSS OF INHERITANCE.

The most serious issue presented by this appeal is whether loss of inheritance is a recoverable item of damage in a Louisiana wrongful death action. La.Civil Code art. 2315. The district court struck the jury's award, finding that the evidence on loss of inheritance was too speculative to support the verdict. We perceive neither error nor abuse of discretion in that action, and affirm.

*Erie*-bound, we turn to Louisiana law for guidance and find the vintage decision in *Eichorn v. New Orleans C.R. Light & Power Co.,* 114 La. 712, 38 So. 526 (1905). In that case the Louisiana Supreme Court held that loss of inheritance was not recoverable under Louisiana's wrongful death statute, which then distinguished between major and minor children and restricted recovery to spouses and minor children. A major child then had no cause of action. In *Eichorn,* a widow filed a wrongful death suit as tutrix of the minor children born to her marriage to the decedent. The court declared:

> We do not think that the amount of property which the father might have possibly earned up to the date of his probable natural death, and which these children might have inherited at that time, enters as a factor in determining to what extent they are entitled to a judgment in their favor. The true question is, what had the children the right to receive from their father during their minority. For the loss of this they are to be compensated. What they were to get after his death would not enter into the case.

*Id.* at 530.

In *Dowell, Inc. v. Jowers,* 166 F.2d 214 (5th Cir.), *cert. denied,* 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759 (1948), a diversity jurisdiction case invoking the Louisiana wrongful death provision, we quoted the foregoing from *Eichorn,* and opined that under Louisiana law, the decedent's earnings factored into the question of damages only insofar as those earnings would be available to a child during minority. Earnings or estate thereafter accumulated by the decedent were not considered relevant in the quantum determination.

Fifty-five years after the *Eichorn* decision, the Louisiana Legislature amended La.Civil Code art. 2315 to create, *inter*

*alia,* a wrongful death claim for major children even though the decedent was survived by a widow and minor children. Major children were thus included in the primary class of survivors. Acts 1960, No. 30, § 1, effective January 1, 1961.

Our research discloses no Louisiana case after the 1960 amendments which addresses the issue whether loss of inheritance is a proper element of damage in a wrongful death action. In a case decided just before the effective date of the amendment, *Pennington v. Justiss-Mears Oil Co.,* 123 So.2d 625, 636 (La.App.1960) (Tate, J.), *aff'd as amended,* 242 La. 1, 134 So.2d 53 (1961), an intermediate appellate court affirmed the trial court's denial of recovery for loss of inheritance by a widow and minor children, without reference to either art. 2315 or *Eichorn,* stating that "under all the circumstances of this case, we do not find that the trial court erred in failing to make such an additional award." The Louisiana Supreme Court granted certiorari. Its review dealt only with the widow's recovery for support and reflected the wide diversity of opinion then existing on that court, of a fair recovery for a widow's loss of support in a wrongful death action. In a case decided after the 1960 amendments to art. 2315, *Parker v. Smith,* 147 So.2d 414 (La.App.1962), the plaintiff's mother had been killed. He specifically sued for "Loss of a reasonably anticipated inheritance." The intermediate appellate court concurred in and quoted with approval the findings of the trial court, including these observations about the loss of inheritance claim: "Without entering into any discussion of whether or not this is a recoverable item of damages, suffice it to say that the record is barren of any evidence whatever on which an award of this type could be made." *Id.* at 415. In *Cheatham v. City of New Orleans,* 368 So.2d 146, 150 (La.App.1979), the court of appeals cited *Eichorn* and made a passing reference, which it actually put in parentheses that a child "is not entitled to his hope of inheritance." In affirming in part and reversing in part, 378 So.2d 369 (La.1979), the Louisiana Supreme Court did not address the *Eichorn* inheritance issue.

We find neither dispositive ruling nor compelling suggestion from Louisiana's courts whether the holding and rationale of *Eichorn* survived the 1960 amendments to Civil Code art. 2315. Louisiana's jurists have not said whether *Eichorn* is alive and well or moribund and languid. If it were necessary, we would make an *Erie* prediction of the response of the Louisiana Supreme Court as to *Eichorn's* continued viability. However, on the record before us, that jurisprudential undertaking is not required.

■ The trial judge granted a judgment n.o.v., excising the jury award for loss of inheritance, after concluding that the evidence in support of that award was too speculative. We agree. Whether such an award is legally appropriate need not be decided for it is manifest that such an award is not factually appropriate in the instant case.

Plaintiffs offered the expert testimony of an economist who made inheritance projections based principally on analysis of the income stream reflected in tax returns for several years immediately prior to the death of Everard Marks, Jr. We find no persuasive evidence of his probable future plans as to work and investments. We find no evidence of his spending habits, commitments to savings plans, asset growth plans or other estate building plans for the children, tax motivated planning, or the probable effect of federal and state estate or inheritance tax which might ultimately have to be paid. In short, we do not find the evidence which might reduce the speculative quality necessarily inherent in the hope or expectation of a future inheritance. Accordingly, attempting to determine what portion of Everard Marks, Jr.'s income might have wended its way into assets which would have formed a part of the inheritance of the children would be mere speculation. It is a well-settled rule that "a damages award cannot stand when the only evidence to support it is speculative or purely conjectural." *Haley v. Pan American World Airways,* 746 F.2d at 316. Lou-

isiana follows the same rule. *Napasco Intern., Inc. v. Tymshare, Inc.* 556 F.Supp. 654 (E.D.La.1983); *Pennington; Parker.* It is conceivable that a factual scenario may be developed and presented which would sufficiently reduce the speculation and conjecture, one which might adequately resolve uncertainties about personal and business reversals and such other future contingencies. At that time, the court may address appropriately the legal issue involved. The case *sub judice* is not that case.

### 4. TAINT OF LOSS OF SUPPORT AWARD.

Pan Am contends that the inheritance issue tainted the award for loss of services and support to the point that even as remitted,[2] those awards were improper. We are not persuaded. There is no mathematical formula to determine the appropriate award for a wrongful death and the resulting loss of support. *See Blancher v. Samuels,* 354 So.2d 213 (La.App.1977), *writ denied,* 355 So.2d 257 (La.1978). Plaintiffs' economist advanced the opinion that the total loss of support to the children was $397.260, including $218,724 for maintenance of the household and $178,536 for their tuition and living expenses until completion of their college educations. The expert's opinion was based upon the presumption that each of the plaintiffs would have received an allowance of $450 per month for living expenses. There was testimony that three of the plaintiffs had been receiving more than $450 per month for their living expenses.

■ As to the loss of services, the court concluded that the jury's award of $150,000 to each child exceeded the bounds of recovery and that the maximum value which could reasonably be placed on Mary Ann Marks's services was $200 per week, distrib- uted among the plaintiffs. The total after remittitur of $27,953 for loss of services and $425,658 for loss of support, in view of these estimates and the deceased Everard Marks's substantial earnings, was within the acceptable damages range. The judgment of the district court is in all respects AFFIRMED.

---

**2.** The jury awarded each child $150,000 for loss of support and $150,000 for loss of services.

The trial court ordered remittitur to the following amounts:

| | Everard III | Stephanie | Michelle | Kyle | Totals |
|---|---|---|---|---|---|
| Loss of services | $ 2,263 | $ 3,868 | $ 6,275 | $ 15,547 | $ 27,953 |
| Loss of support | 95,299 | 107,784 | 100,591 | 121,984 | 425,658 |