JANVIER, Judge.
The automobile collision from which this suit results took place at about 2:15 in the afternoon of December 28, 1950, in the intersection of Maurepas Street and Gentilly Road very near to one of the automobile exits from the Fair Grounds race track in New Orleans. It was raining at the time and the surface of the roadway was wet.
A taxicab, which was owned by the plaintiff, Raymond Mitchell, and was leased to and operated by Ernest B. LeBlanc, had just emerged from the exit of the race track and had turned to its right in an uptown direction on the west roadway of the Gentilly Road and would have crossed the intersection of Maurepas Street had the collision not occurred in that intersection. *464 The exit from, the race track was about a qua.rter of ,a block from the intersection— LeBlanc says “about a quarter of - a block,maybe less, * * * just a short distance.”
The other vehicle which was involved was a “stake.body” truck owned by defendant, Frank .A. Romano, to whom the other defendant, "United States Casualty Company, had issued a policy of property damage and public liability insurance.
The truck had been goingun "the opposite direction on the other roadway of Gentilly and had been turned to .its left at the Maurepas- Street intersection by. Romano, its operator,, who intended to cross the west roadway on ■ which the plaintiff’s taxicab was operated and to enter Maurepas' Street. Just, after the Romano truck had completed, the left turn and had emerged from the protection afforded by the neutral ground, it was struck on its right side by the taxicab operated by LeBlanc.
Mitchell, alleging that the collision had resulted from negligence on the part of Romano, brought this suit against him and his liability insurance carrier, praying for. solidary judgment for $1,505.83, alleging that the cost of repairing his taxicab had been $449.83, and that, in addition, he was entitled to recover $1,056.83 for the loss of the use of his taxicab, while it was- not in operation from the date of the accident, December 28, 1950, until the filing of this suit on July 2;'1951.
Mitchell charges that Romano was at fault - jn; driving the truck at an excessive rate of .speed; in failing to maintain a proper lookout;, in failing to have the truck under control, in “driving into a stopped car” and in failing to stop and blow his horn before entering the intersection.
The defendants, admitting the occurrence of the accident, denied that Romano had been in any way at fault and averred that the collision had resulted from negligence on the part, of Mitchell, in failing to main-, tain a, proper lookout for other cars which-might be crossing the intersection;, in operating the taxicab at an excessive rate of speed,, and in, failing, .to yield the right of way to the Romano truck “which-had preempted the ¡intersection.”
Defendants, in" thé alternative that it should appear. that Romano was in any way at fault, especially averred that Mitchell had been guilty of contributory negligence in the particulars above stated.
■■ In-the Civil District Court for the Parish of -Orleans'there was judgment in favor of plaintiff in the sum of $527.83; solidarily,, against both- defendants; who have appealed devolutively and suspensively. Mitchell did not answer the appeal.
■ The record'makes it quite clear that neither.-car- was brought to a stop before' reaching the-intersection. It also'appears that the taxicab, driven by Mitchell,' had emerged from the exit of the race track, which is. on the- west side of the street about 75 feet from the intersection, and that the taxicab had proceeded in a. diagonal direction across the west side roadway of Gentilly Road toward the intersection. In spite of some contradictory statements,'we think that the curb side of that roadway was lined with other cars which were parked and that this, to some extent, was responsible for the failure of Romano to see the taxicab as he turned his truck to the left and, after crossing the neutral area, attempted to cross the west roadway of Gentilly Road in front of the taxicab which was approaching.
Romano says that when he looked to see if any cars were approaching from the other direction on the west roadway, the nearest ones were about 150 feet away and that he was therefore under the impression that he could cross that roadway before any of those,-cars .could reach the intersection, but that subsequently, the taxicab, which had come diagonally across from the curbside' o"f the" roadway, struck his truck on its right side.
There was a third witness who claimed to have seen the occurrence — one Claude-Morris, who says. that he, like LeBlanc,. *465 had just emerged from the exit of the race track. He says that he was driving to the right of the taxicab when the taxicab suddenly stopped and he says “it looked like the back of the truck might have slid and caught the front of the taxicab, pulling it over.” Morris says that he’continued on his way, went around the block and came back and “got to, talking” with Romano, and that he told Romano that “if he hadn’t been driving so fast, maybe he could haye stopped.” He says that after that remark Romano struck him and that this is all that he remembers. He says “ * * * there were two licks passed, when he hit me and when I hit the ground.” .
Were it not for the finding of the trial Judge we ivould have had some' difficulty in concluding that the accident resulted solely from the fact that Romano unexpectedly turned his truck to the left and into the path of the taxicab. The record does not eliminate the possibility that the accident might have been avoided by LeBlanc had he himself been a little more alert.
However, we feel certain that the evidence does not make this sufficiently certain to justify the conclusion that on this question of fact the court below was manifestly in error. Consequently, the finding of liability in the defendant, Frank A. Romano, should not be reversed.
When we come to consider the amount of the award, we find that it is stipulated that the estimate of $449.83, which was made for the repair of the Mitchell taxicab, was correct. Some delay in making the repairs seems to have resulted from negotiations which the defendant insurance company carried oh with the plaintiff. However, the evidence shows that the repairs could have been made in about four days and that the estimate for making the repairs was given to Romano eight days after the occurrence of ‘the accident. The District Court apparently allowed. $6 per day for 13 days but- did not allow plaintiff to recover, for that long period .‘during which the repairs were not made after the estimate was furnished. - We think .The allowance ,of the District • Court in this regard was correct.
' Consequently, it is ordered, adjudged and decreed that'the judgment appealed from be and it is affirmed at the cost of appellants.
Affirmed.