SAMUEL, Judge.
This is a suit to recover damages for personal injuries and medical expenses resulting from an accident which occurred at the intersection of ■ Loyola Avenue and what is now called Chase Court in New Orleans. A taxicab, owned by Checker Cabs, Inc., backed into the plaintiff wife, Mrs. Velma Brown, while she, a pedestrian, was standing approximately 2feet from the roadbed of Loyola waiting to cross its westbound traffic lanes. The original defendants were Checker Cabs, its driver and its alleged ins°urer, Manchester Insurance and' Indemnity Company. However, by supplemental and amended petition St. Louis Fire & Marine Insurance Company was substituted as a defendant instead of Manchester. In addition, the plaintiff husband, Henry James Brown, died before judgment and his heirs were substituted for him to assert his claim for medical expenses.
After trial, there was judgment awarding $578 for medical expenses and $13,700 for Mrs. Brown’s physical injuries. The injuries were itemized as follows:
(1) Injury to right hand . . $1,000.00
(2) Injury to right leg and hip.$1,500.00
(3) Cervical strain .... $4,200.00
(4) Horner’s syndrome . . . $5,000.00
(5) Pain and Suffering, Past, Present and Future.$2,000.00
Defendants have appealed. In this court they concede liability and contend only that the awards for the physical injuries were excessive, particularly in that the evidence is insufficient to sustain a finding of Hor-ner’s syndrome.
Mrs. Brown testified she sought medical attention the day of the accident but was *276 unable to obtain treatment from a doctor in a nearby office building or from her own private physician, since neither doctor wished to become involved in potential litigation. Five days later, on September 30, 1967, she consulted Dr. James T. Nix, Jr. who initiated treatment which continued for approximately 2i/á years.
Dr. Nix was an expert in the field of general and traumatic surgery. At his initial examination he found hematomas and contusions, hypertension, thromophlebitis of the right leg, lipoma of the left foot, stellate syndrome with venous compression, Horner’s syndrome, neurological deficit in the fourth and fifth fingers of the right hand, and a cervical and lumbar sprain. He also felt there was possible cervical nerve root damage as well as a probability that plaintiff’s pre-existing heart condition was aggravated by the accident.
Mrs. Brown’s testimony regarding the symptoms resulting from the accident coincided with that given by Dr. Nix. While it is not necessary to give an extensive summary of her testimony, it is significant to note the trial judge stated in his reasons for judgment that he “was extremely impressed with the testimony of plaintiff and plaintiff’s sincerity.”
The only physician who testified with regard to injuries other than Horner’s syndrome was Dr. Nix. His testimony, as corroborated by plaintiff, establishes with no contradiction that she sustained injuries to her right hand, right leg, and right hip. There is also little doubt that she also suffered a cervical strain and that this strain was fairly severe in its intensity. If this court was considering the matter initially, we probably would not have awarded as much as $8,700 for these injuries. However, we cannot say the trial judge exceeded the great discretion afforded him in assessing damages and conclude he committed no manifest error by making those awards.[1]
The major contested issue is the $5,000 award for the condition known as Horner’s syndrome. Dr. Nix’s diagnosis of this condition was based primarily upon a lack of prominence' of one of plaintiff’s eyes, one of the classic symptoms of the syndrome. Mrs. Brown also was examined by Dr. Robert F. Azar, an expert in the field of ophthalmology, to whom she was referred.
Dr. Azar’s report was stipulated into evidence. He found none of the classic symptoms of this syndrome other than myopic (constricted) pupils of both eyes. The report describes Horner’s syndrome as a group of symptoms having its origin in paralysis of the sympathetic nerve supply. The symptoms collectively called Horner’s syndrome are the restriction of the pupil, drooping of the eyelid, a sinking of the eyeball into its socket, dilation of the ocular blood vessels and a dry surface skin around the eye afflicted thereby. It is evidenced by a pupil which displays a decreased sensitivity to dilating drugs such as atropine and cocaine and hypersensitivity to adrenalin. Dr. Azar also stated it was possible to have myosis of the pupil as the only sign of injury to the sympathetic nervous system without the other enumerated symptoms. His diagnosis of Horner’s syndrome, although equivocal, apparently resulted from the failure of the pupils to dilate on application of cocaine and the occurrence oT a significant dilation of both pupils upon administration of adrenalin. He concluded that while partial bilateral Horner’s syndrome is rare, Mrs. Brown demonstrated the clinical findings expected in such a condition. The report states that while plaintiff is unlikely to experience a measurable or specific loss of visual function, the abnormalities of her pupils indicate “the strong probability” that cervical trauma of considerable degree occurred and caused damage to the sympathetic neurological pathways supplying the eyes.
On April 4, 1969, Dr. Shelley R. Gaines, also a specialist in the field of ophthalmol *277 ogy, conducted an examination of plaintiff’s eyes. She concluded that there was no objective evidence of injury to her eyes, and specifically excluded evidence of Hor-ner’s syndrome.
Mrs. Brown’s testimony is to the effect that she has experienced considerable eye difficulty since the accident and that her only problem prior to that time was nearsightedness.
The trial judge found as a fact that the injury resulted in Horner’s syndrome. While there is some doubt, it cannot be said plaintiff failed to carry her burden by a fair preponderance of the evidence. Under such circumstances, the trial judge’s conclusion and the amount of the award will not be disturbed.[2]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. See Canter v. Koehring Company, 283 So.2d 716.

. See Canter v. Koehring Company, supra, footnote 1; Passalaqua v. Keenan, La.App., 249 So.2d 238.